IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KELLY CAROL LEE SAUNDERS,<br><br>               Plaintiff,<br><br>     vs.<br><br>SAN JUAN CONSTRUCTION CO., et al.,<br><br>               Defendants. | CIVIL NO. 19-00631 JAO-RT<br><br>**ORDER (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS OR TRANSFER AND (2) TRANSFERRING ACTION** |

**ORDER (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS OR TRANSFER AND (2) TRANSFERRING ACTION**

Plaintiff Kelly Carol Lee Saunders brings employment discrimination claims against Defendants San Juan Construction Company, Kelly Neill, Wade Hogan, and John Vinton.  Defendants move to dismiss because the Court lacks jurisdiction over them as non-resident defendants and because a forum selection clause renders the District of Hawaii an improper venue, alternatively seeking transfer to the United States District Court for the District of Colorado under 28 U.S.C. §1404(a).  ECF No. 19.  For the reasons stated below, Defendants' motion to dismiss or transfer is GRANTED in part and, in the interest of justice, this action is TRANSFERRED to the United States District Court for the District of Colorado.

# I.    BACKGROUND

## A.    Facts[1]

In April 2017, Plaintiff accepted employment with Defendant San Juan Construction Company ("San Juan") to work on the Echo Pier Restoration Construction Project on Kwajalein Atoll, which is part of the Republic of the Marshall Islands.  *See* ECF No. 1 ("Compl.") at 3, 5.  San Juan, a Colorado corporation with headquarters in Montrose, Colorado, is a full-service general contractor with projects in the outer Pacific and Indian Ocean islands.  *See id.* at 2; *see also* ECF No. 19-1 ("Neill Decl.") ¶¶ 6, 7; ECF No. 19 at 11.  Pursuant to Plaintiff's "Overseas Employment Agreement" with San Juan, all her work was on Kwajalein.  *See* ECF No. 19-2.

Plaintiff accepted a position as an Assistant Quality Control Manager ("Assistant QCM") for the Echo Pier project.  *See* Compl. at 5.  She accepted the Assistant QCM position rather than a position as a Quality Control Manager ("QCM") because San Juan told her she needed ten years of experience working on pier construction for the QCM position, and she only had five.  *See id.*  When Plaintiff arrived on Kwajalein, however, she discovered that two other QCMs, who

---

[1]  Where, as here, facts are relevant to the personal jurisdiction analysis, the Court will look beyond the allegations in the Complaint to the evidence the parties submitted.  *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

were younger men, had no prior pier construction experience and did not meet the minimum education requirements, although she did meet those requirements. *See id.* Plaintiff alleges that Defendant Wade Hogan, the Corporate Quality Control Manager for San Juan at its headquarters in Colorado, lied to her when explaining that she did not meet the requirements for the QCM position and instead hired two younger men who were less qualified and did not meet the minimum requirements. *See id.* at 7; ECF No. 19-3 ("Hogan Decl.") ¶ 4.

When another QCM quit, Plaintiff was reassigned to the QCM position for the renovation of Building 602. *See* Compl. at 5. Although the U.S. Army Corps of Engineers approved her as the QCM for that project, San Juan refused to pay her the higher QCM salary despite her continued requests to the Project Manager, Defendant John Vinton. *See id.* at 5, 7. She alleges that when she tried to discuss her unequal pay and the fact that she was more qualified than other QCMs with Vinton, he threatened to report her to Wade Hogan, have her job evaluation re-evaluated, and told her he wanted her "gone." *See id.* at 7. Plaintiff also alleges Wade Hogan continued to pay her the lower Assistant QCM salary after being reassigned to a QCM position, despite her protests. *See id.* Plaintiff further alleges that Defendant Kelly Neill, San Juan's Corporate Human Resources Manager at its headquarters in Colorado, was aware that San Juan was paying Plaintiff the lower Assistant QCM rate even after it reassigned her to the QCM position (including as

evidenced by an organization chart Neill distributed that listed Plaintiff as a QCM), but still failed to raise her salary.  *See id.* at 7; Neill Decl. ¶ 4.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  *See* Compl. at 5.  The EEOC issued a right-to-sue-letter and this action followed, where Plaintiff brings claims for gender and age discrimination in violation of Title VII and the Age Discrimination in Employment Act ("ADEA") based on San Juan's failure to promote her and the unequal terms and conditions of her employment.  *See id.* at 3, 4.  Plaintiff brings these claims against San Juan, which she alleges established the discriminatory policies that were carried out against her, as well as Kelly Neill, Wade Hogan, and John Vinton, all of whom are or were employed by San Juan at its headquarters in Colorado and involved in decisions related to Plaintiff's employment.  *See id.* at 7; *see also* Neill Decl. ¶¶ 4–5, 10–11; Hogan Decl. ¶ 4; ECF No. 19-4 ("Vinton Decl.") ¶ 4.

## B.   Procedural History

Plaintiff filed her Complaint against Defendants on November 21, 2019. ECF No. 1.  Defendants move to dismiss the Complaint, or alternatively seek transfer under 28 U.S.C. § 1404(a).  ECF No. 19.  Plaintiff opposes the motion. ECF No. 35.  The Court deemed this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; LR 7.1(c).

## II.   DISCUSSION

4

## A.    Defendants' Motion under Rule 12(b)(2)

### 1.    Legal Standard under Rule 12(b)(2)

A defendant may seek dismissal of an action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  A plaintiff bears the burden of establishing personal jurisdiction over a nonresident defendant.  *See Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).  Where, as here, a district court acts on a motion to dismiss without holding an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.  *See Love*, 611 F.3d at 608; *Schwarzenegger*, 374 F.3d at 800.  Although a plaintiff may not simply rest on the bare allegations of the complaint, a court must take uncontroverted allegations in the complaint as true, and must resolve in the plaintiff's favor any conflicts between parties over statements contained in affidavits or declarations.  *See Love*, 611 F.3d at 608; *Schwarzenegger*, 374 F.3d at 800.

When no federal statute governs personal jurisdiction,[2] the district court applies the law of the forum state.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Hawaii's jurisdiction reaches the limits of due process set by the United States Constitution.  *See Cowan v. First Ins. Co. of Hawaii*, 61 Haw. 644,

---

[2]  Neither party contends that a federal statute governs personal jurisdiction here.

649, 608 P.2d 394, 399 (1980) (explaining Hawaii's long-arm statute, Hawaiʻi Revised Statutes § 634-35, was adopted to expand the jurisdiction of Hawaiʻi courts to the extent permitted by the due process clause of the Fourteenth Amendment).

The Due Process Clause protects a person's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)) (footnote omitted). The Due Process Clause requires that defendants have "certain minimum contacts with [Hawaiʻi] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (citations omitted); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).

In applying Due Process Clause requirements, courts have created two jurisdictional concepts: general and specific jurisdiction. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). General jurisdiction permits a court to hear any claim against a defendant, regardless of whether the complained-of conduct has a connection to the forum state. *See id.* Specific jurisdiction exists when a case arises out of or relates to a defendant's contacts with the forum state. *See id.*

Because it is unclear on which form of jurisdiction Plaintiff relies, the Court addresses each in turn.

### 2.    General Jurisdiction

A plaintiff asserting general jurisdiction must meet an exacting standard for the minimum contacts analysis because asserting this type of "all-purpose" jurisdiction over a defendant is so broad. *Id.* at 1069 & n.2 (citations omitted). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). The contacts must be "constant and pervasive," in other words, "comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 122, 133 n.11 (2014). The paradigmatic places where general jurisdiction is appropriate over a corporation are its principal place of business and its place of incorporation. *See id.* at 137; *see also Goodyear*, 564 U.S. at 924. For individuals, the paradigm forum is their domicile. *See Daimler*, 571 U.S. at 137; *Goodyear*, 546 U.S. at 924. Only in an

exceptional case will general jurisdiction be available elsewhere.  *See Daimler*, 571 U.S. at 139 n.19.[3]

Here, none of the individual Defendants are domiciled in Hawaiʻi.  *See* Neill Decl. ¶ 8 (resident of Colorado); Hogan Decl. ¶ 5 (resident of Colorado); Vinton Decl. ¶ 5 (resident of New Mexico).  The only corporate Defendant, San Juan, is incorporated in Colorado, which is also the location of its principal place of business.  *See* Neill Decl. ¶¶ 4, 7, 9.  Nor has Plaintiff offered any compelling argument or evidence as to why this is an exceptional case.  Plaintiff has not alleged or offered evidence that the individual Defendants conduct any activity in Hawaiʻi.  *See, e.g.*, Hogan Decl. ¶ 5; Vinton Decl. ¶ 5.  With regard to San Juan, all its officers maintain offices in Colorado, and most of its management decisions are made there.  *See* Neill Decl. ¶¶ 7, 9.  Evidence that San Juan is registered to do business here, has an office here, or has completed federal projects affiliated with Hawaiʻi does not suffice to establish that it is "essentially at home" in Hawaiʻi— particularly when Plaintiff has not provided evidence of San Juan's business activities "in their entirety, nationwide and worldwide," which the Supreme Court has said is necessary to determine where a corporation is most "at home."

---

[3]  In *Daimler*, the Supreme Court cited, as an example of such an exception, a case where war forced the defendant corporation to temporarily relocate to Ohio, which became the center of its wartime activities and thus subjected it to suit there.  *See Daimler*, 571 U.S. at 129–30 & n.8 (discussing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)).

*Daimler*, 571 U.S. at 132, 137, 139 & n.20 (noting that corporation's continuous activity in a state does not establish general jurisdiction); *see also BNSF Ry. Co. v. Tyrrell*, __ U.S. __, 137 S. Ct. 1549, 1559 (2017) (holding there was no general jurisdiction over BNSF in forum despite it having 2,000 miles of railroad track and more than 2,000 employees there).  The Court therefore cannot exercise general jurisdiction over any Defendant.

### 3.    Specific Jurisdiction

The Ninth Circuit applies the following three-part test to determine whether specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citation omitted).  The plaintiff bears the burden of satisfying the first two prongs of the test.  *See id.*  If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is lacking.  If the plaintiff succeeds in satisfying the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable.  *See id.*

### i.      Arising Out of Defendants' Forum-Related Activities

Taking the second prong of the specific jurisdiction test first, Plaintiff does

not respond to Defendants' argument, and so concedes, that her claims do *not* arise

out of any of Defendants' contacts with Hawaiʻi.  *See* ECF No. 35 at 2–3. Instead,

in her opposition, she notes only that San Juan is registered to do business in

Hawaiʻi and has an office in Hawaiʻi,[4] saying nothing about the individual

Defendants' personal connections to Hawaiʻi or how San Juan's connections with

Hawaiʻi gave rise to or relate to her claims for discrimination, which occurred in

the Marshall Islands and were allegedly perpetrated by a Colorado entity and its

officers or employees based in Colorado.  *See* ECF No. 35 at 2–3; Compl. at 7; *see

also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th

Cir. 2013) ("This court has referred to the second prong of the specific jurisdiction

test as a 'but for' test." (citation and footnote omitted)); *Banks v. Am. Airlines*, No.

19-CV-04026-JSC, 2019 WL 5579479, at *4–5 (N.D. Cal. Oct. 29, 2019)

(concluding that California resident's discrimination claims arising from her work

as a flight attendant out of Arizona did not arise from defendant's contacts with

---

[4]  San Juan contends it does not physically operate out of that office, and instead
has an address that is currently rented to a third party.  *See* ECF No. 36-1 ("Second
Neill Decl.") ¶ 4.

California).⁵  While her declaration contains information connecting Hawai‘i to the Marshall Islands,⁶ these facts do not demonstrate a direct, causal nexus between Defendants' contact with Hawai‘i and her allegations that she was discriminated against while working for a Colorado entity in the Marshall Islands.  For this reason alone, the Court cannot exercise specific jurisdiction over any Defendants.

### ii.     Purposeful Availment or Direction

In addition, Plaintiff also has not met her burden with regard to the first prong of the specific jurisdiction test.  For this prong, the Ninth Circuit generally looks to a party's "purposeful direction" for actions sounding in tort, and "purposeful availment" for actions sounding in contract.  *See Schwarzenegger*, 374 F.3d at 802–03.  Because discrimination claims are more akin to tort claims, courts in the Ninth Circuit have applied the "purposeful direction" test to claims like those Plaintiff brings here.  *See, e.g.*, *Bradley v. T-Mobile US, Inc.*, No. 17-cv-07232-BLF, 2020 WL 1233924, at *13 (N.D. Cal. Mar. 13, 2020) (citing *Ziegler v.*

---

⁵  For example, Plaintiff has not claimed any direct nexus between the projects she was employed on and the State of Hawai‘i.  *See* ECF No. 35-1 ("Saunders Decl.") ¶ 13 (referencing ECF No. 35-6)); *see also* Neill Decl. ¶ 13.  And it is uncontroverted that San Juan has not filed a tax return in Hawai‘i for several years. Second Neill Decl. ¶ 5.

⁶  *See* Saunders Decl. ¶¶ 16–17 (attesting that civilian employees must travel through Honolulu to reach Kwajalein and that debris from construction projects on Kwajalein is shipped to Honolulu).

*Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995) (analyzing Section 1983 claim under purposeful direction test because it "is more akin to a tort claim than a contract claim" and citing with approval an ADEA case applying the tort-case standard)); *see also De Leon v. KBR, Inc.*, Civ. No. 11-00685 ACK-BMK, 2012 WL 1606068, at *6 (D. Haw. May 8, 2012).

In evaluating purposeful direction, the Ninth Circuit uses a three-part "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984) where, as here, the tortious conduct takes place outside the forum. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). "[T]he 'effects' test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citation omitted).

More recently, the Supreme Court clarified that in assessing personal jurisdiction, a court must "look[ ] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (citations omitted). Thus, a "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 290. Rather, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a

12

substantial connection with the forum State" and that "relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State" rather than "persons who reside there." *Id.* at 284–85 (citations omitted). Following *Walden*, the Ninth Circuit confirmed that merely alleging that a defendant engaged in wrongful conduct targeting a plaintiff the defendant knows to be a resident of the forum state, such that harm in the forum state is foreseeable, is insufficient on its own to support the exercise of jurisdiction. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069–70 (9th Cir. 2017)

Here, again, Plaintiff argues only that San Juan availed itself of the benefits of this forum by doing some business here—without connecting that business to any harm Plaintiff complains about in the present suit. *See* ECF No. 35 at 2–3. Plaintiff submits evidence that she was a Hawaiʻi resident at the time she began her employment with San Juan. *See* Saunders Decl. ¶¶ 5–6. But under *Walden* this is insufficient to demonstrate that Defendants' suit-related conduct creates a substantial connection with Hawaiʻi—as opposed to a connection with Plaintiff who resides here—given she alleges their suit-related conduct consists only of discriminating against her from Colorado while she was living and working in the Marshall Islands. *See* Compl. at 5, 7; *see also Picot v. Weston*, 780 F.3d 1206, 1214–15 (9th Cir. 2015) (holding California could not exercise specific jurisdiction over defendant whose tortious conduct consisted of making statements to an Ohio

resident that caused a Delaware corporation to cease making payments into two trusts in Wyoming and Australia all without entering California, contacting any person in California, or otherwise reaching out to California despite plaintiff being a resident of California and defendant having twice traveled to California in connection with the parties' business relationship).

Courts in the Ninth Circuit have also rejected similar attempts by a resident plaintiff to hale its non-resident employer into a forum where none of the work was performed and none of the discriminatory acts occurred. *See, e.g.*, *Coffey v. Mesa Airlines Inc.*, No. CV 18-3688-DMG (PLAx), 2019 WL 4492952, at *5–6 (C.D. Cal. Apr. 15, 2019) (relying on *Picot* and *Walden*, among other cases, to conclude that an out-of-forum airline employing a California resident as a pilot, providing the pilot flights from California to his Dallas work hub, and offering flights into and out of California—but not intra-California flights—did not purposefully avail itself of or purposefully direct its actions to California when alleged misconduct occurred in Texas and Arizona). This is because "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286

(citation omitted).[7]

The Court therefore concludes that it cannot exercise specific jurisdiction over any Defendant.  The Court therefore need not address Defendants' other arguments regarding improper venue or transfer for convenience under § 1404(a); however, it must address whether the lack of jurisdiction over the Defendants warrants dismissing or transferring this action.

**B.    Transfer Versus Dismissal**

The Court concludes that transfer to the District of Colorado, rather than dismissal, is appropriate here.  If a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed."  28 U.S.C. § 1631; *see also Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 761–62 (9th Cir. 1990) (finding a lack of personal jurisdiction and remanding with instruction that district court dismiss or transfer the action pursuant to § 1631).  "A case is transferable when three conditions are met:  (1) the transferee court would have been able to exercise its jurisdiction on the date the

---

[7] For completeness, the Court would reach the same conclusion under the purposeful availment test—which generally applies to contract claims—even if Plaintiff was a Hawaiʻi resident at the time she entered into a contract with San Juan that envisioned performance in Colorado or the Marshall Islands.  *See Picot*, 780 F.3d at 1212 (noting that a contract alone does not establish minimum contacts); *see also Coffey*, 2019 WL 4492952, at *5 (citing *id.*).

action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interest of justice." *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1140 (9th Cir. 2008) (citations and internal quotation marks omitted).

As discussed above, the Court concludes the second element is met here. Under the first element, the District of Colorado can exercise jurisdiction over all the Defendants because San Juan, Neill, and Hogan, are citizens and residents of Colorado, *see* Neill Decl. ¶¶ 4, 7–9; Hogan Decl. ¶¶ 5–6, Vinton has explicitly consented to personal jurisdiction in Colorado, Vinton Decl. ¶¶ 4, 6, and all have moved in the alternative to transfer venue of this action on convenience grounds to the District of Colorado. *See U.S. Merch. Sys., LLC. v. A Furniture Homestore LLC*, No. C 07-0991 CRB, 2007 WL 1302979, at *4 (N.D. Cal. May 3, 2007) (concluding transfer was appropriate where defendants alternatively moved to transfer, which constituted consent to personal jurisdiction in transferee forum). Nor has Plaintiff argued that Colorado would not have had personal jurisdiction over each Defendant at the time the action was filed.

Venue is also proper in the District of Colorado because many of the employment decisions Plaintiff complains about occurred at San Juan's headquarters in Colorado or, alternatively, San Juan has its principal office in Colorado and all Defendants are subject to personal jurisdiction there. *See* Compl. at 7; ECF No. 19 at 31–32; 42 U.S.C. § 2000e-5(f)(3) (special venue provisions for

16

Title VII claims); 28 U.S.C. § 1391(b) (general venue provision); *see also Enoh v. Hewlett Packard Enter. Co.*, No. 17-cv-04212-BLF, 2018 WL 3377547, at *7 (N.D. Cal. July 11, 2018) (holding narrower venue provision of § 2000e-5(f)(3) applies to both Title VII and ADEA claims when plaintiff brings both types of claims, even if ADEA claims are ordinarily governed by the general venue provision).[8]

Finally, transfer serves the interest of justice given the statute of limitation issues that could arise with dismissal. *See Stone v. NHS Human Servs.*, No. CV 17-00601 LEK-KSC, 2018 WL 5499533, at *8 (D. Haw. Oct. 29, 2018) (transferring case in the interest of justice because Title VII claim would otherwise be time-barred given that timely filing a complaint that is later dismissed does not toll or suspend the 90-day limitations period to file suit after receiving a right-to-sue letter). There is also no indication Plaintiff filed the action here in bad faith; thus, dismissal of this action that could have been filed elsewhere would only be

---

[8] The Court notes that Title VII's venue provision provides an independent reason why this action must be dismissed or transferred, given § 2000e–5(f)(3) lays venue only in a district: (i) where the unlawful employment practice was committed (Colorado and Marshall Islands); (ii) where the employment records relevant to that practice are maintained and administered (unclear, although possibly Colorado); or (iii) in the district where Plaintiff would have worked but for the employment practice (Marshall Islands); but if the Defendants are not found within any of those districts, then where they have their principal office (Colorado). *See Enoh*, 2018 WL 3377547, at *7–12; *see also* 28 U.S.C. § 1406(a) (providing for transfer where venue in original forum is improper).

"time-consuming and justice-defeating." *See Miller v. Hambrick*, 905 F.2d 259,

262 (9th Cir. 1990) (citation omitted).

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or transfer is

**GRANTED in part**, and this action is **TRANSFERRED** to the United States

District Court for the District of Colorado.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, June 8, 2020.



Jill A. Otake
United States District Judge

Civil No. 19-00631 JAO-RT, *Saunders v. San Juan Construction Co., et al.*, ORDER (1) GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS OR TRANSFER AND (2) TRANSFERRING ACTION